# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BLAYNE L. BOOTH, LORI K. BOOTH,
ALEXANDRA R. BOOTH, and
JACOB A. BOOTH,

                    Plaintiffs,

        v.                                               Civ. No. 06-1219  JP/KBM

KIT, INC., a New Mexico corporation,
SURENDRA B. SHARMA,
TNJ CONSTRUCTION, a general partnership
of Tusharkumar A. Patel and Jayesh A. Patel,
AQUATIC POOLS, INC., a New Mexico
corporation, GRAHAM MECHANICAL, a
general partnership of Shannon Graham and
Cheyene Graham, MIDSOUTH CONSTR.,
INC., a New Mexico corporation, A&K
MECHANICAL CONTRACTORS, LLC, a
New Mexico Limited Liability Company,

                    Defendants.


## MEMORANDUM OPINION AND ORDER

        On July 18, 2008, Plaintiffs filed their Motion For Partial Summary Judgment On

Defendant Kit, Inc.'s Vicarious Liability Under Section 422 of the Restatement of Torts, Second

and supporting Memorandum (Doc. Nos. 280 and 282) (the "Motion On Vicarious Liability").

Defendants Kit, Inc. ("Kit") and Surenda Sharma ("Sharma") filed their Response to the Motion

on August 1, 2008 (Doc. No. 304).[1]  On September 14, 2008 Plaintiffs filed a Reply (Doc. No.

---

[1] Defendant Midsouth Construction, Inc. filed its Response to the Motion On Vicarious
Liability (Doc. No. 295) ("Midsouth's Response") on July 25, 2008 but has settled with Plaintiffs
and has been dismissed from this action.

327).[2]

On July 20, 2008, Plaintiffs filed their Motion For Partial Summary Judgment Against Remaining Non-Settling Defendants Requesting Preclusion Of Governmental Entities Or Employees From Comparison of Fault and Memorandum In Support (Doc. Nos. 285 and 286) against Defendants Kit, Sharma, and TNJ Construction (the "Motion On Comparative Fault"). Defendants Kit, Sharma and TNJ Construction filed a Response on August 4, 2008 (Doc. No. 305). On September 16, 2008, Plaintiffs filed a Reply brief (Doc. No. 330).

Plaintiffs have settled with Defendants Aquatic Pools, Inc., Midsouth Construction, Inc. and Graham Mechanical, and these Defendants have been dismissed with prejudice from this case (Doc. No. 333). The remaining non-settling defendants are Kit, Sharma and TNJ Construction.[3]

Having considered the arguments and briefs, the Court will grant in part Plaintiffs' Motion On Vicarious Liability and will hold as a matter of law that Kit is vicariously liable for Plaintiffs' injuries to the extent they were caused by the remaining non-settling contractors and subcontractors hired by Kit. The Court will also hold as a matter of law that Kit is vicariously liable for Plaintiffs' injuries to the extent they were caused by any of Kit's contractors, including Kit's architect, Mr. Locke, with whom Kit contracted to provide plans for the Motel. The Court, however, will deny that portion of the Motion On Vicarious Liability that seeks to hold Kit

---

[2] The Court received a letter from counsel for Defendant TNJ Construction, LLC dated September 17, 2008 arguing that *Livingston v. Begay*, 652 P.2d 734 (N.M. 1982) supports limiting a motel owner's duty to a guest who was asphyxiated by carbon monoxide that escaped from a heater located in the guest's room. As pointed out by a response letter dated September 23, 2008 from Plaintiffs' counsel, the *Livingston* case involves a claim of strict liability which is not asserted in this case. *Id.* at 735.

[3] Defendant A&K Mechanical Contractors, LLC has not been served and has not participated in this action. (*See* Doc. No. 35, Return of Service Unexecuted.)

vicariously liable for the negligence of governmental inspectors who inspected the premises during construction and who issued certificates of occupancy for the Motel because those governmental inspectors were not Kit's contractors. Because the governmental inspectors can be considered separate concurrent tortfeasors, the Court will deny Plaintiffs' Motion On Comparative Fault. Under New Mexico's comparative fault scheme, Defendants Kit, Sharma and TNJ Construction should be allowed to present evidence concerning the extent to which governmental inspectors were at fault in causing Plaintiffs' injuries.

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).

**Facts**

For purposes of ruling on Plaintiffs' motions for partial summary judgment, the following are the undisputed material facts.[4]

Plaintiffs Blayne Booth and Lori Booth, husband and wife, are residents of Arizona and are the parents of Plaintiffs Alexandra Booth and Jacob Booth. (Sec. Am. Compl. ¶¶ 1-2; Doc. No. 203.) Kit is a New Mexico corporation that owns and operates a motel, which was previously known as the AmeriHost Inn & Suites (the "Motel") and which is located at 2191 Highway 70 West, Ruidoso Downs, Lincoln County, New Mexico.[5] (Sec. Am. Compl. ¶¶ 3, 20.) Defendant Surendra Sharma is the President and Chief Operating Officer of Kit. (Sec. Am. Compl. ¶ 6.) On July 26, 2005, Plaintiffs checked in as guests of the Motel and were assigned to Room #125. (Sec. Am. Compl. ¶ 20.) During their stay at the Motel, Plaintiffs were exposed to carbon monoxide. (Mot. On Vicarious Liability 2.) On July 27, 2005, Plaintiffs were taken by ambulance to the Lincoln County Medical Center, where they were treated, tested and released. (Ans. Sec. Am. Compl. ¶ 13.)

In 2002, Kit hired Defendant TNJ Construction as the general contractor to construct the Motel. (Sec. Am. Compl. ¶ 12.) As part of the construction agreement, TNJ Construction was to

---

[4] The facts used in ruling on these motions come from the following sources: 1) the factual allegations recited in the Second Amended Complaint (Doc. No. 203) which were admitted by Defendants in their Answer (Doc. No. 215); 2) the undisputed facts recited in the motions not specifically controverted by Defendants; and 3) Hatchell's Report described *infra*.

[5] When the Motel was constructed, Kit operated it under a franchise agreement with Hampton Inn & Suites ("Hampton"). Several months after the Motel was constructed, Kit changed its franchise affiliation and name to AmeriHost Inn & Suites and subsequently changed its name and affiliation to Ramada Ruidoso Downs. (Sharma Dep. 34:15- 35: 21.) At the time relevant to this proceeding, the Motel was known as the AmeriHost Inn & Suites.

obtain all building permits and inspections. (Mot. on Compar. Fault 2.)  TNJ Construction hired

several subcontractors to complete the construction of the Motel, including Defendant Aquatic

Pools, Inc., the pool installation subcontractor, Defendant Graham Mechanical, the plumbing

subcontractor, Defendant Midsouth Construction, Inc., the sheet rock subcontractor and

Defendant A&K Mechanical Contractors, LLC, the heating and cooling subcontractor.  (Sec. Am.

Compl. ¶¶ 12-16.)

In addition to the pleadings and for purposes of their Motion on Vicarious Liability,

Plaintiffs submit the report of Kit's expert Jon Kirk Hatchell ("Hatchell"), a licensed building

contractor. (*See* Mot. On Vicarious Liability Ex. A.)  Kit and Sharma have not disputed the facts

stated in Hatchell's report.  For purposes of ruling on the Motion On Vicarious Liability and the

Motion On Comparative Liability the Court will consider the undisputed admissible statements in

Hatchell's report.

## Hatchell's Report

Hatchell states that the construction of buildings such as the Motel is governed by the

New Mexico Construction Industry Division ("CID"), which is "mandated by the State to

overview construction both residential and commercial. . . ."  (Hatchell Rep. 1.)  The CID

inspects construction work to determine whether it is in compliance with the applicable Uniform

Building Code ("UBC") and the International Building Code. (*Id.*) The 1997 UBC was in force in

New Mexico at the time the Motel was constructed. (*Id.*)  Referring to inspectors hired by the

CID, Hatchell states, "[w]e rely on these professionals to inspect plans, review structural

specifications, understand mechanical and electrical policy and safety issues to determine that

structures are safe to inhabit and comply with applicable codes." (*Id.*)  The City of Ruidoso

Downs, New Mexico (the "City") inspected the Motel during construction and issued a certificate of occupancy for the Motel. (*Id.* at 3.)

In Hatchell's opinion, the plans submitted by the architect, Mr. Ted Locke, "were not complete and needed to be revised." (*Id.* at 2.) The plans also lacked specificity in design "especially in regard to the mechanical room," where the pool heating equipment is located. (*Id.*) Hatchell reviewed the Hampton Inn Manual, which contains requirements for construction. (*Id.*) The Manual provides "that the location of [the mechanical room], which includes gas powered pool and spa heating units, not be under a residential room." (*Id.*) However, as Hatchell observed, "[t]he mechanical room of the Motel is located under a residential room." (*Id.*) The plans for the Motel also "fail to provide specifics in regard to the mechanical units, the venting of those units, the set up of the mechanical room, and the combustion air for the units." (*Id.*) These failures all contributed to "the wrong equipment, poor venting concepts, and ultimate failure of the equipment." (*Id.*) "Mr. Locke's lack of specifications and noncompliance with applicable codes, Hampton Inn requirements and safety issues contributed to the failure of equipment and ultimately spreading [carbon monoxide] through the hotel." (*Id.* at 3.) In Hatchell's opinion, Mr. Locke's plans "do not meet standard construction practices, the 1997 Uniform Building Code, in effect in New Mexico at the time of construction, and the Hampton Inn's stringent Franchise Development standards." (*Id.*)

Hatchell states that he reviewed "two inspection sheets written by Hampton inspectors to show that on-site inspections were completed and that deficiencies occurred." (*Id.* at 3.) These sheets "coincide with certificates of occupancy reports issued by the City of Ruidoso Downs dated July 31, 2003 and October 28, 2003." (*Id.*) "The inspections were done prior to the

certificates and seem to be preparatory to the certificates." (*Id.*)  They were very "detailed and comprehensive involving structural details and life safety issues."  (*Id.*)  The reports contain "no entries detailing problems with the pool, pool equipment, location of the pool equipment room, ventilation or gaps around the mechanical room door or in the mechanical room."  (*Id.*)  Hatchell opined that "Hampton inspectors" should have discovered those issues and notified Mr. Sharma, the President of Kit. (*Id.*) Hatchell further opined, "Hampton's lack of control of this project is in direct opposition to their standard guidelines." (*Id.* at 3-4.)

Hatchell concluded as follows:

Mr. Locke's casual focus on the plans and specifications, his lack of involvement with Hampton Inns to produce a Hampton approved set of plans, Hampton Inn's casual approval to the plan process in violation of their own requirements, contributed to the carbon monoxide incident. The New Mexico CID and the City of Ruidoso Downs acceptance of incomplete plans, inspections that did not disclose violations and safety issues and the issuance of certificates of occupancy contributed to the carbon monoxide incident.

(*Id.* at 4.)

## Case History

On December 14, 2006 Plaintiffs filed their original Complaint for Personal Injuries and Demand for Jury Trial (Doc. No. 1) against Kit and Sharma.  Defendants Kit and Sharma filed an answer asserting as a affirmative defense that other parties were at fault for Plaintiffs' injuries, but if Defendants were at fault, their liability "should be reduced by the percentage of fault apportioned to others pursuant to pure comparative fault principals [sic] in force in this jurisdiction." (Ans. at 5; Doc. No. 8.)  Plaintiffs filed a Motion to Strike these affirmative defenses (Doc. No. 11) arguing that as owners and operators of the Motel, Defendants Kit and Sharma had non-delegable duties to provide a safe motel for their guests.  In the Motion to Strike, Plaintiffs

argued that even though Defendant Kit used independent contractors to complete construction and repair work on the premises, it would be vicariously liable for any negligence of those contractors under New Mexico law. (Mot. to Strike 2.) Defendants Kit and Sharma filed a Response to the Motion to Strike (Doc. No. 15). In the Response Defendants recognized that Kit, as owner of the motel, would be vicariously liable for the negligence of the general building contractor and its subcontractors whom it hired to construct the Motel. However, Kit argued that it would not be vicariously liable for the negligence of other persons or entities such as the manufacturer of the pool heater or the State and City building inspectors. Kit further argued that even if it were vicariously liable, it could pursue indemnification from the other Defendants who are found to have been negligent in constructing the Motel. (Resp. 4.) On February 27, 2008, the Court denied the Motion to Strike without prejudice stating that the issue could be revisited, ". . . after the parties have had an opportunity to conduct discovery and once it becomes clear whose alleged fault the Defendants wish to have compared by a jury." (Order 2; Doc. No. 17.)

### Plaintiffs' Motion On Vicarious Liability

In the Motion on Vicarious Liability, Plaintiffs ask that the Court grant partial summary judgment finding Kit vicariously liable for the negligence of the following: 1) contractors and subcontractors to the extent that their work on the Motel is found to have caused the generation or transmission of the carbon monoxide to which Plaintiffs were exposed; 2) Kit's architect, Mr. Locke, to the extent his designs and plans of the Motel are found to have contributed to the generation or transmission of the carbon monoxide to which Plaintiffs were exposed; and 3) other persons and entities, including governmental agencies and employees, to the extent their failure to properly perform inspections of the plans or the construction of the Motel caused the generation

and transmission of the carbon monoxide to which Plaintiffs were exposed.

Kit presents four arguments in opposing Plaintiffs' Motion on Vicarious Liability. The first two arguments are procedural. Kit first argues that Plaintiffs's Motion fails to satisfy Local Rule 56.1(b), which requires a summary judgment memorandum to "set out a concise statement of all of the material facts as to which movant contends no genuine issue exists." DNM LR Civ. 56.1(b). In addition, "[t]he facts must be numbered and must refer with particularity to those portions of the record upon which movant relies." *Id.* The Motion states the following:

> It is undisputed that on July 26 and 27, 2005, the Plaintiffs were at Kit's motel as paying guests. Likewise, it is undisputed that during their stay, the Plaintiffs were exposed to carbon monoxide. This motion is based upon the pleading filed herein and the report of Kit's expert, Mr. Hatchell. A copy of Mr. Hatchell's report is attached to this Motion as Exhibit A.

(Mot. On Vicarious Liability 2.) Although the Motion on Vicarious Liability fails to follow the requirements of the local rule, the court will not deny it on that ground and will consider the undisputed facts cited above, in addition to Hatchell's report.

Next, Kit argues that Plaintiffs have waived any cause of action for vicarious liability because they failed to plead this cause of action in their Second Amended Complaint. Kit points out that other guests of the Motel have filed lawsuits against it stemming from the same event in which they alleged that Kit had a non-delegable duty to keep its premises in a safe condition and that it is, therefore, vicariously liable for its contractors' negligence. Kit contends that due to the omission of vicarious liability in Plaintiffs' Second Amended Complaint it had no notice that Plaintiffs would pursue this theory of liability. The deadline for amendments has passed, and Kit argues that Plaintiffs now must seek leave of this Court to assert this theory.

It is difficult to understand how Kit failed to ascertain Plaintiffs' intention to seek to hold

them vicariously liable when Plaintiffs argued this issue early on in their Motion to Strike. Therefore, the Court cannot find that Plaintiffs waived this theory of recovery, nor can the Court find that Kit is prejudiced by Plaintiffs' assertion of vicarious liability in its Motion On Vicarious Liability. *See Minter v. Prime Equipment*, 451 F.3d 1196, 1208 (10th Cir. 2006) (noting that plaintiff should not be prevented from pursuing a claim different from those specifically pled provided that defendant will not be prejudiced in maintaining his defense on the merits).

### *The Basis for Vicarious Liability*

In New Mexico, the owner of a building owes business visitors the duty to use ordinary care to keep the premises safe. *Broome v. Byrd*, 822 P.2d 677, 679 (N.M. Ct. App. 1991). In *Broome*, the plaintiff, a tenant in a commercial building, was injured when she fell over a painter's drop cloth. The owner argued that he was not vicariously liable for the negligence of the painter, an independent contractor. After noting that a landowner may not escape liability by delegating repair and maintenance to a third party, the New Mexico Court of Appeals adopted Section 422 of the Restatement (Second) Torts, which states,

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
>> (a) while the possessor has retained possession of the land during the progress of the work . . . or
>> (b) after he has resumed possession of the land upon its completion.

RESTATEMENT (SECOND)TORTS § 422 (1964), cited in *Broome*, 822 P.2d at 680; *see also Otero v. Jordon Restaurant Enterp.*, 895 P.2d 243, 245 (N.M. Ct. App. 1995), *aff'd on other grounds*, 922 P.2d 569 (1996) (adopting sub-part (b) of section 422).

The *Broome* court reasoned,

> We see no principled basis for letting an owner of a building avoid the duty merely because of the manner in which he chose to have repairs done. We thus hold that an owner of a commercial building can be held vicariously liable for an independent contractor's negligence where the negligence created a dangerous condition causing injury to a business visitor in those areas of the building over which the owner retains control.

*Broome,* 822 P.2d at 680. Under this premise, a property owner is held liable for injuries sustained by his business invitees and guests due to dangerous conditions on the premises even if he entrusts the construction or repairs to independent contractors. *See Otero,* 922 P.2d 569, 574-75 (N.M. 1996) (extending application of vicarious liability to injuries occurring after construction completed). Therefore, under New Mexico law, Kit is vicariously liable for the negligent work performed by its construction contractor and subcontractors to the extent that their negligence caused the transmission of carbon monoxide that injured Plaintiffs.

### The Settlement With Subcontractors

Plaintiffs have settled with three of the subcontractors: Defendant Aquatic Pools, Inc., Defendant MidSouth Construction, Inc. and Defendant Graham Mechanical. In its Response, Kit argues that as a result of the settlement, Plaintiffs waived their claim that Kit is vicariously liable for the negligence of these subcontractors. Kit relies on the following part of the Settlement Agreement:

> The Booths, . . . and the Released Parties agree this Agreement does not discharge any **individual liability** of any of the Third Parties in any lawsuit now pending or to be filed by . . . the Booths, . . . . The Booths . . . and the Released Parties also agree that none of the Third Parties in any lawsuit now pending or to be filed should be liable for the pro rata share of damages allocable to the Released Parties for the Injury as found in any lawsuit now pending or to be filed by . . . the Booths. . . .

(MidSouth Resp. 2, quoting Section 3.6 of Settlement Agreement) (emphasis added)). This part of the Settlement Agreement, however, pertains to the individual liability of the non-settling third

parties, including Kit, and does not mention vicarious liability. Plaintiffs have asserted direct claims of negligence against Kit and Sharma. (*See* Sec. Am. Compl. ¶ 24.)[6] With respect to any direct liability of Kit or Sharma, this portion of the settlement agreement simply recognizes that under New Mexico law Plaintiffs must recover from each individual defendant severally in proportion to the fault of each Defendant. *See* N.M. Stat. Ann. § 41-3A-1(B) (1996) ("In causes of action to which several liability applies, any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and persons not party to the action.").

Section 3.6 of the Settlement Agreement also contains a judgment offset provision, which Kit contends also constitutes a waiver of Plaintiffs' vicarious liability claims.

---

[6] For example, in the Second Amended Complaint, Plaintiffs allege *inter alia,* that Kit and Sharma: (1) negligently operated, vented and maintained pool heaters that they knew or should have known would produce carbon monoxide gas; (2) permitted large areas of sheetrock to be removed in areas above hallway ceilings, which permitted carbon monoxide gases to migrate into the hallway and into the guest rooms; (3) failed to evacuate guests when carbon monoxide was discovered in the motel; and (4) continued to accept new guests in the Motel after carbon monoxide was discovered. (Sec. Am. Compl. ¶ 24 a.-l.)

The provision states the following:

> Should it be determined by motion or by judgment in any lawsuit now pending or to be filed by . . . the Booths . . . , however, that any of the Third Parties are **jointly and severally liable** for the pro rata share of damages awarded to the Booths, . . . because of any fault allocable to Release Parties, then the Booths, . . . agree if it becomes necessary in order to extinguish any claims for contribution or common law indemnity by the Third Parties against the Released Parties, the Booths, . . . shall reduce their judgment against Third Parties in a dollar amount equal to the portion of the total dollar amount awarded to the Booths, . . . as damages multiplied by the percentage of fault as determined and allocated to the Released Parties in such case brought by the Booths . . . .

(MidSouth Resp. 2 (quoting Section 3.6 of Settlement Agreement) (emphasis added)).

New Mexico allows the imposition of joint and several liability against persons who are vicariously liable for the acts of others. *See* N.M. Stat. Ann. § 41-3A-1(C)(2) (1996) ("The doctrine imposing joint and several liability shall apply: . . . (2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons). In the judgment offset provision of the Settlement Agreement, the reference to joint and several liability appears to address any vicarious liability of non-settling third parties, such as Kit. However, this provision does not waive any right of Plaintiffs to pursue joint and several liability, but instead provides that if the settling parties are faced with a claim for contribution or indemnity by any non-settling parties, Plaintiffs agree to reduce their judgment to extinguish those claims. *See Employers' Fire Ins. Co. v. Welch*, 433 P.2d 79, 80 (N.M. 1967) (stating that employer of tortfeasor who has been held liable on the theory of respondeat superior may recover indemnification from the tortfeasor only where the employer's liability is based solely upon that doctrine and where there is not actual or active negligence on the part of the employer).

Kit's argument that Plaintiffs waived recovery against Kit by settling with and dismissing

three of the subcontractors is essentially an argument that the settlement extinguishes Kit's

vicarious liability for the actions of those subcontractors. This argument is based on the nature of

vicarious liability, which is derivative or imputed liability. As explained in *Kinetics, Inc. v. El

Paso Products Co.*, 653 P.2d 522 (N.M. Ct. App. 1982),

> The definition of vicarious liability is indirect legal responsibility. . . .Vicarious liability is
> based on a relationship between the parties, irrespective of participation, either by act or
> omission, of the one vicariously liable, under which it has been determined as a matter of
> policy that one person should be liable for the act of the other. Its true basis is largely one
> of public or social policy under which it has been determined that, irrespective of fault, a
> party should be held to respond for the acts of another.

*Id.* at 527 (citing *Dessauer v. Memorial General Hospital*, 628 P.2d 337 (N.M. Ct. App.1981)

(Sutin, J., concurring)). In *Kinetics,* the plaintiff sued a partnership and its partners for selling to

plaintiff defective resin used in the plaintiff's manufacturing process. After the plaintiff settled

with the partnership and dismissed it from the lawsuit, a partner argued that the dismissal of the

partnership should inure to its benefit. The court agreed.

> Because the partnership was released, the means by which liability was imputed to the
> partners was destroyed. Accordingly, we conclude that the dismissal of Robinson and
> Lamey [the partnership] also released the partner, El Paso California, from **any liability**.

*Id.* (emphasis added). The court stressed that the dismissal was appropriate because the partners

were sued for vicarious liability only and that the outcome would be different if the partners

themselves were sued for negligence. *Id.* (noting that absent any negligence of the master,

"exoneration of the servant removes the foundation upon which to impute negligence to the

master.") (citing, *Harrison v. Lucero*, 525 P.2d 941, 944 (N.M. Ct. App. 1974)). Thus, to the

extent Kit is found vicariously liable for the actions of the subcontractors who settled with

Plaintiffs, Kit's vicarious liability is extinguished; however, unlike the situation in *Kinetics*,

Plaintiffs have also alleged that Kit is directly liable for its own negligence. Direct claims against Kit would not be extinguished by the Settlement Agreement. *Id.* In addition, Plaintiffs' vicarious liability claims are not all extinguished by the Settlement Agreement. Kit can still be held vicariously liable for the negligence of one or more contractors with whom Plaintiffs have not settled, such as A&K Mechanical, if one or more of them are found to have negligently contributed to the release of carbon monoxide that injured Plaintiffs.

### Kit's Vicarious Liability: Architect, Designers and Inspectors

Kit's expert, Hatchell, determined that the architect, Ted Locke and perhaps other design professionals and inspectors provided by Hampton contributed to the negligent design and construction of the Motel, particularly the mechanical room housing the pool heating equipment. (Hatchell Rep. 2.)[7] No evidence is presented identifying these designers and inspectors, nor is there evidence indicating whether they were hired by Kit to review the plans or inspect the construction.

---

[7] Hatchell's report states that, in his opinion, the architect's plans were incomplete and lacked specificity in design, especially in regard to the mechanical room housing the pool heater. (*Id.*) According to Hatchell, this lack of specificity contributed to the placing of the wrong equipment, poor venting concepts, and ultimate failure of the equipment all of which resulted in the spreading of carbon monoxide into the Plaintiffs' room. (Hatchell's Rep. 2-3.) Hatchell also stated that Hampton was involved in the overall design of motels constructed by its franchisees. (Hatchell Rep. 3) Hatchell reviewed the franchise agreement between Hampton and Sharma and concluded that under the agreement, the Motel construction project was "totally dictated by the Hampton Inn construction manual." (Hatchell Rep. 3.) Hatchell concluded that under the process dictated in the franchise agreement and the construction manual, "Hampton Inns implies . . . that they provide the new owner a motel that is safe for guests, functionally reliable and meets [sic] the high standards of all Hilton and Hampton Inns." (*Id.*) Hatchell refers to a group of persons as "Hampton inspectors." Hatchell states that he reviewed two inspection sheets reflecting that on-site inspections took place and that "deficiencies occurred." (Hatchell Rep. 3.) Hatchell states that these inspection sheets coincide with certificates of occupancy reports issued by the City. (*Id.*)

While Plaintiffs dispute Hatchell's conclusions, they argue that even if Hatchell is correct, the Court should rule as a matter of law that Kit is vicariously liable for all persons whose actions contributed to the faulty condition of the Motel, including the architect who prepared the plans and anyone provided by Hampton who worked on the design of the Motel or inspected the plans or construction. Plaintiffs assert that these persons were Kit's contractors because Kit paid a franchise fee for the use of their skill and knowledge. Plaintiffs cite *Otero* and the Restatement (Second) Torts § 422 comment d., which states,

> *When work divided.* The rule stated in this Section is applicable irrespective of whether the **contractor's** negligence consists of a failure to exercise care to prepare adequate plans, or to make adequate inspections of the work as it progresses or after it is finished or to ascertain the need of repair, or of the carelessness or incompetency of himself or his employees which results in bad workmanship. . . . Occasionally these various parts of the work are entrusted to different **contractors**. An architect may be **employed** to prepare plans and inspect work, while a builder is **employed** to make the repairs subject to the inspection of his work by the architect. Occasionally three different persons are **employed**—one to prepare the plans, another to execute them, and a third to make the necessary inspections. . . . the employer is liable irrespective of whether this is due to the negligence of a single contractor employed to do all three of these parts of the work of repairs or is due to the failure of a particular contractor employed to do any one part thereof.

RESTATEMENT (SECOND) OF TORTS § 422 (1965) (cmt. d.) (emphasis added). In *Otero* the New Mexico Court of Appeals held that the restaurant owner was vicariously liable for its construction contractor's negligence and also for its architect's negligence in failing to ensure the safe assembly of the bleachers which collapsed injuring Plaintiff. *See Otero*, 895 P.2d at 247 (finding that owner vicariously liable for architect's negligence because architect was owner's independent contractor), *aff'd on other grounds,* 922 P.2d at 570 n. 2 (stating that under Section 422(b) of the Restatement, a restaurant owner would be entitled to indemnification from its architect and contractor for whose negligence the owner is vicariously liable). *See also Williams v. Central*

*Consol. School Dist.*, 952 P.2d 978, 983 (N.M. 1996) (stating in dicta that vicarious liability specifically includes work delegated to an independent architect).

In its Response, Kit argues that neither the architect, Mr. Locke, nor any employee of the franchiser, were its independent contractors. Kit asserts that Mr. Locke was provided by Hampton, which dictated to its franchisees the manner in which they were to build motels according to certain specifications. Kit also contends that it did not pay any Hampton employee to inspect the Motel, but merely paid a franchise fee to Hampton, which required the inspection as part of the construction process. Kit submits the following deposition testimony of Mr. Sharma:

> Q: Did Mr. Bowles tell you that if you became a franchisee of Hampton Inns, you would have to build the building according to certain specifications and requirements?
> A: That's correct.
> Q: What, if anything, did you receive from Hampton Inn in terms of plans or specifications or requirements for construction?
> A: Well, they recommended us an architect.
> Q: And that was Mr. Locke?
> A: That's correct.
> Q: And did you engage Mr. Locke?
> A: Yeah. We hired him.
> Q: What was Mr. Locke's job?
> A: He provided us the plans for the site, how to build the Hampton Inn.
> Q: All right. Did you hire Mr. Locke to do any inspection work while the construction was being done?
> A: He inspected the property once or twice.
> Q: Did you have to pay him extra for that?
> A: No. It was part of the contract.

(Sharma Dep. 32:20 – 33:15.)

The Restatement (Second) of Agency defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." RESTATEMENT (SECOND) AGENCY § 2 (3) (1958),

cited in *Harger v. Structural Services, Inc.*, 916 P.2d 1324, 1331 (N.M. 1996) (adopting

Restatement definition in Workmen's Compensation case). New Mexico Uniform Jury

Instruction 13-404 defines independent contractor as follows:

> An independent contractor is one who agrees to do certain work where the person who
> engages the contractor may direct the result to be accomplished but does not have the
> right to control the manner in which the details of the work are to be performed.

NMR Civ. UJI 13-404.

Kit's argument that the architect was not one of its contractors is belied by Sharma's

testimony that he hired Locke, and that Locke provided plans for the site and inspected the site as

part of the contract. Kit fails to demonstrate the existence of a fact issue as to Locke's status as

its independent contractor; therefore, as a matter of law, Kit is liable for any negligence

attributable to the actions of Locke to the extent that his negligence in preparing the plans or in

inspecting the construction work resulted in the dangerous condition of the Motel that caused

Plaintiffs' injuries. As for any Hampton employees who worked on the Motel plans or who

inspected the plans or the construction, the Court cannot rule as a matter of law that Kit is liable

for their actions because the record does not demonstrate who these persons were or whether

they can be considered contractors of Kit. Thus, fact issues exist as to whether any persons

provided by Hampton who performed inspections or other work in connection with the

construction of the Motel were Kit's independent contractors for whom it may be held vicariously

liable.

### Kit's Vicarious Liability: Governmental Entities

In the Motion On Vicarious Liability, Plaintiffs argue that under § 422 of the Restatement,

Kit is liable not only for the negligence of its construction contractors but also for any negligence

of the governmental inspectors from the New Mexico CID and the City, who failed to discover

defects in the plans or in the construction of the Motel. Kit argues that because these

governmental entities and their employees were not its contractors, it cannot be vicariously liable

for their negligence. Plaintiffs counter that Kit was required to build the Motel in conformity with

applicable building codes, and it is undisputed that Kit delegated that duty to its general

contractor, TNJ Construction to obtain and pay for governmental inspections necessary to acquire

certificates of occupancy. Plaintiffs, citing Restatement § 422, assert that Kit should be

vicariously liable for any negligence in the performance of these activities regardless of the

"contractor's" private or governmental status. Section 422, however, does not expand liability to

persons with whom a premises owner did not have a contract but simply addresses the situation in

which different contractors perform various functions in construction or repair work. Kit argues

that the justifications for imposing vicarious liability are not present with respect to governmental

inspectors with whom Kit had no contractual relationship. *See Otero*, 895 P.2d at 245 (N.M. Ct.

App. 1995) (stating that the policy reasons for imposing liability on premises owner are that

owner obtains the benefit of the contractor's work and an owner can insure against risks and

incorporate those expenses into its overhead) (citation omitted).

The Court agrees. Kit's vicarious liability should not include liability for the negligence of

entities with whom it did not have a contractual relationship. A premises owner's vicarious

liability under Section 422 is predicated upon a relationship similar to an employer/employee or

principal/agent relationship. *See Kinetics*, 653 P.2d at 527 ("Vicarious liability is based on a

relationship between the parties."). Without this relationship, there is no basis upon which to

impose vicarious liability. The New Mexico Supreme Court recognized this principle when it

stated that if a governmental entity was negligent in issuing a license to the owner's contractor,

> we would ordinarily remand this case for a determination by the factfinder whether the evidence adduced by [the owner] demonstrated that the City had breached its duty to [the plaintiff], and, if so, using principles of comparative fault, a determination of the extent to which this breach contributed to [the plaintiff's] injuries, . . .

*Otero*, 922 P.2d at 574 (1996).[8]  In New Mexico, the general rule, with limited exceptions, is that each tortfeasor is severally responsible for its own percentage of comparative fault for a single injury.  *Bartlett v. N.M. Welding Supply, Inc.*, 646 P.2d 579, 585 (N.M. Ct. App.1982), *superseded in part on other grounds by* N.M. Stat. Ann. § 41-3A-1 (1997).  Consequently, although Kit is jointly and severally liable for the negligence of its contractors who performed the design and construction work on the Motel, it is severally liable only for a proportion of the fault attributable to those contractors and not for the fault, if any, attributable to State or City inspectors with whom Kit did not contract. N.M. Stat. Ann. § 41-3A-1(C)(2) (providing that joint and several liability applies to a person whose relationship to another would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons); *cf. Reichert v. Atler*, 875 P.2d 379, 382 (N.M. 1994) (holding that bar owner's failure to perform duty to keep premises safe for patrons should be compared with harmful conduct of third party).

---

[8] Due to the particular circumstances of the *Otero* case, however, the court refused to allow the premises owner to compare its fault to that of the City because the City was the victim of an intentional misrepresentation by the contractor. *See id.* (finding that trial court properly refused instruction on comparative fault because contractor should not be able to profit from his fraud and premises owner stood in shoes of its contractor for purposes of indemnification from the City).

## Plaintiffs' Motion On Comparative Fault

Defendants Kit, Sharma, and TNJ Construction have indicated that they intend to ask the Court to submit to the jury the names of governmental entities and employees for purposes of comparative fault, alleging that those entities and/or employees were negligent in reviewing plans and/or in inspecting the construction of the Motel. (Mot. On Compar. Fault 2). As discussed *supra* Hatchell stated that both State and City inspectors should not have approved the plans for construction of the premises and should not have issued certificates of occupancy for the Motel. (*See* Hatchell Rep. 2-4.) Plaintiffs argue that because the governmental entities and employees are immune from suit under the New Mexico Tort Claims Act,[9] Kit, Sharma and TNJ Construction should not be allowed to assert the comparative fault of these parties. Plaintiffs reason that in order for fault to exist, there must be a tort established, requiring an actionable duty to the public and a breach of that duty that proximately caused compensable damages. According to Plaintiffs, the governmental entities and employees who are immune from liability have no actionable duty and, thus, could not have committed a tort. Plaintiffs point to the following statement by the New Mexico legislature justifying the provisions of the Tort Claims Act: "government should not have the duty to do everything that might be done." N.M. Stat. Ann. § 41-4-2 (1996). According to Plaintiffs, since neither the State nor the City has waived immunity for negligent inspections, they have no duty with regard to building inspections and their negligence may not be considered in a comparative fault analysis.

Defendants argue that under New Mexico comparative fault law it is irrelevant whether a concurrent tortfeasor is liable for its negligence because it is the fault, not the ultimate liability,

---

[9] *See* N.M. Stat. Ann. § 41-4-1 et seq. (1996).

that is compared. New Mexico adopted comparative negligence in order to fairly distribute the burden of fault and "hold[ ] all parties fully responsible for their own respective acts to the degree that those acts have caused harm." *Scott v. Rizzo*, 634 P.2d 1234, 1242 (N.M. 1981). New Mexico statutory law provides,

> In causes of action to which several liability applies, any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and persons not party to the action.

N.M. Stat. Ann. § 41-3A-1(B) (1996). The *Bartlett* court stated,

> It is accepted practice to include all tortfeasors in the apportionment question. This includes nonparties who may be unknown tortfeasors, phantom drivers, and persons alleged to be negligent **but not liable in damages** to the injured party such as in the third party cases arising in the workmen's compensation area.

*Bartlett v. New Mexico Welding Supply, Inc.*, 646 P.2d 579, 586 (N.M. Ct. App. 1982) (citation omitted) (emphasis added). Under New Mexico law, it is irrelevant to comparative fault whether a plaintiff collects from a concurrent tortfeasor. *Id.* (allowing comparative fault instruction as to unknown driver). And, the Tort Claims Act does not change this principle. The Act provides public employees with "immunity from liability for any tort except when immunity is specifically waived in the Act" but does not address public employees' duties to the public. *McDermitt v. Corrections Corp. of America*, 814 P.2d 115, 116 (N.M. Ct. App. 1991) (stating that the Tort Claims Act explicitly ties the waiver of immunity to certain torts or violations of rights). Whether a public employee is immune from suit for a particular tort does not affect whether that tort has been committed. *Otero*, 922 P.2d at 574 (noting that ordinarily the City's fault would be compared when its licensing of contractor was result of negligence). Thus, Defendants Kit,

Sharma and TNJ Construction will be allowed, as a matter of New Mexico law, to compare their fault to the fault, if any, of governmental inspectors.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' Motion On Vicarious Liability is granted in part as to Kit's vicarious liability for any negligence of its contractor, TNJ Construction, and any non-settling persons or entities, including the architect, Ted Locke, to the extent that they are found to be independent contractors of Kit and to have negligently created or contributed to the existence of carbon monoxide that caused Plaintiffs' injuries;

(2) Plaintiffs' Motion On Vicarious Liability is denied in part as to Kit's vicarious liability for the negligence of State or City inspectors who inspected the construction of the Motel;

(3) the Motion On Comparative Fault is denied; and

(4) a separate judgment will be entered with this Memorandum Opinion and Order.

_____

UNITED STATES SENIOR DISTRICT JUDGE