# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**BLAYNE L. BOOTH, LORI K. BOOTH,**
**ALEXANDRA R. BOOTH, and**
**JACOB A. BOOTH,**

**Plaintiffs,**

**v.**                                                   **Civ. No. 06-1219  JP/KBM**

**KIT, INC., a New Mexico corporation,**
**SURENDRA B. SHARMA,**
**TNJ CONSTRUCTION, a general**
**partnership of Tusharkumar A. Patel and**
**Jayesh A. Patel, AQUATIC POOLS, INC., a**
**New Mexico corporation, GRAHAM**
**MECHANICAL, a general partnership of**
**Shannon Graham and Cheyene Graham,**
**MIDSOUTH CONSTR., INC., a New Mexico**
**corporation, A&K MECHANICAL**
**CONTRACTORS, LLC, a New Mexico**
**Limited Liability Company,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION TO STRIKE, LIMIT OR EXCLUDE TESTIMONY OF DR. WILLIAM W. ORRISON, JR., MD

On March 9, 2009, Defendants TNJ Construction and Management ("TNJ"), KIT, Inc.

("KIT") and Surendra Sharma ("Sharma") (together, "Defendants") filed their Joint Motion *In*

*Limine* To Exclude The Opinion Testimony Of Plaintiffs' Expert William W. Orrison, Jr., M.D.

(Doc. No. 358) (the "Motion") and Memorandum In Support of the Motion (Doc. No. 359).  On

March 19, 2009, Plaintiffs filed their Response to the Motion ("Response") (Doc. No. 385).

Neither side requests a hearing on the Motion; Defendants did not ask for a hearing in the

Motion, itself, or in the supporting Memorandum, and Plaintiffs did not request a hearing in their

Response.[1]  Having reviewed the Motion, the arguments and the law, the Court has determined

that a hearing is not necessary and will deny the Motion.[2]

<u>Background</u>

This lawsuit stems from an incident in July 2005 in which Plaintiffs, Blayne and Lori

Booth, their five year old daughter Alexandra and their 18 month old son Jacob were exposed to

carbon monoxide gas while guests at the AmerHost Inn & Suites ("Motel") in Ruidoso Downs,

New Mexico.  Plaintiffs allege that the carbon monoxide gas leaked from a poorly constructed or

repaired exhaust venting system related to the Motel's pool heating equipment.  Defendant KIT

owns the Motel, and Defendant Sharma is the president of KIT. Defendant TNJ was the general

contractor for the construction of the Motel.  In February 2008, Plaintiffs designated as an expert

witness Dr. William W. Orrison, Jr., M.D., a board certified neuroradiologist who practices at

the Nevada Imaging Center.  Dr. Orrison will provide expert opinion testimony on findings he

made after performing Magnetic Resonance Imaging (MRI) studies on Lori, Alexandra and

---

[1] If the Court misunderstood, and the parties do want a *Daubert* hearing, they may
contact the office of District Judge James O. Browning, the judge presiding at the trial, to
schedule a *Daubert* hearing on the Motion as requested by Judge Browning in his Minute Order
entered on March 23, 2009 (Doc. No. 388).

[2] In their Response, Plaintiffs ask that the Court award them costs and attorneys' fees
incurred in connection with responding to the Motion as a sanction arguing that the Motion is
frivolous and that Defendants misrepresent certain facts such as the results of Dr. Orrison's MRI
study on a party to another lawsuit filed in connection with the same carbon monoxide incident.
(Resp. at 12.)  Plaintiffs do not cite the rule or statute upon which their request for sanctions is
based.  The Court assumes that the request is based on an alleged violation of Fed. R. Civ. P. 11.
Rule 11(c)(2) states that a motion for sanctions "must be made separately from any other motion
and must describe the specific conduct that allegedly violates Rule 11(b)." Also, a motion for
sanctions  must be served as provided in Rule 5, and "it must not be filed or be presented to
the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately
corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P.
11(c)(2). The record contains no suggestions that any of these conditions have been met, and the
Court, therefore, declines to entertain Plaintiffs' request for sanctions.

Jacob Booth.  In Dr. Orrison's opinion, Lori, Alexandra and Jacob sustained brain injuries caused by the exposure to carbon monoxide.

On June 27, 2006, Dr. Orrison performed 3.0T MRI studies on Lori and Alexandra Booth.  On July 12, 2006, Dr. Orrison performed a 3.0T MRI study on Jacob Booth.  Dr. Orrison has reviewed approximately 100,000 MRI studies in his career, out of which 150-200 involved persons exposed to carbon monoxide. (Mot. Ex. B, Orrison Dep. 27:17-20, 39:9-10.)

In the Motion, Defendants argue that Dr. Orrison's testimony is unreliable, has not been subject to peer review, could be erroneous and should not be permitted under the guidelines of Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 and *Daubert* Analysis

The admission of expert testimony is governed by Federal Rule of Evidence 702.  Rule 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592 (1993) the Court performs an important "gatekeeping role in assessing scientific evidence." *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1203-04 (10th Cir. 2002) (citations omitted) (upholding determination that plaintiffs' expert testimony was not sufficiently reliable regarding role of drug Parlodel in causing intracerebral hemorrhage).

In determining whether to admit expert opinion evidence, the Court performs a two-step

analysis. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).  First, the Court has to determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. Fed. R. Evid. 702.  Second, the Court determines whether the proffered evidence is both "reliable" and "relevant." *Hollander*, 289 F.3d at 1204 (citing *Daubert*, 509 U.S. at 589).  Reliability is determined by assessing "whether **the reasoning or methodology** underlying the testimony is scientifically valid." *Id.* (citing *Daubert*, 509 U.S. at 592-93) (emphasis added). Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* (citing *Daubert*, 509 U.S. at 593). The Court expects the jury will be instructed that it may give as much or as little weight to expert opinions as the jurors think those opinions deserve.

1.  Dr. Orrison's Qualifications

Defendants do not directly attack Dr. Orrison's qualifications, but Defendants assert that Dr. Orrison does not have sufficient experience evaluating MRI scans of patients exposed to carbon monoxide to render opinions in this case. Dr. Orrison testified that out of 100,000 patients he has seen over the course of his 27-year career, 150 to 200 of them were carbon monoxide exposed patients. (Mot. Ex. B, Orrison Dep. 26:20-27:12.)  Defendants point to Dr. Orrison's admission that he uses a check list when reviewing MRIs of persons with carbon monoxide exposure, and his admission that he, like all other radiologists, has made mistakes and has changed his opinion in the past after another neuroradiologist gave a conflicting opinion. Defendants have failed to convince the Court that Dr. Orrison is unqualified to give an opinion about evaluations and interpretations of MRIs performed on persons who experienced exposure to carbon monoxide. Dr. Orrison is a neuroradiologist with experience examining the MRI's of carbon monoxide-exposed patients and admitted to using a checklist because this type of

4

evaluation is very complex and the list is extensive. Dr. Orrison reviewed Lori's, Alexandra's and Jacob's medical histories, performed a PET scan and an MRI scan on Lori and Alexandra, performed an MRI scan and a Diffusion Tensor Imaging (DTI) study on Jacob, and cited several sources of medical literature in support of his opinions.

2.  Dr. Orrison's Reading Not Tested

Defendants argue that despite Dr. Orrison's admissions that readings of MRI scans are subjective, that no two human brains are identical, and that there is a range of "normal" in terms of brain physiology, Dr. Orrison did not attempt to confirm the accuracy of his conclusions either by using a computer program available to verify his readings or by comparing these scans to either healthy patients or patients that were exposed to carbon monoxide.  Any weakness in the readings due to lack of confirmation goes to the weight of Dr. Orrison's opinion not its admissibility.  Defendants have failed to show that Dr. Orrison's methodology is so suspect as to be wholly unreliable.  *See Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (focusing on an expert's methodology rather than the conclusions it generates).

3. Dr. Orrison's Lack of Peer Review

Defendants argue that Dr. Orrison's opinion that all three Plaintiffs suffered brain damage from carbon monoxide exposure was not confirmed by submission to a blind study or by submission for a "second opinion."  Defendants also argue that Dr. Orrison has no peer reviewed publications on the subject of carbon monoxide induced brain damage other than one article that he co-authored that appeared in the *Acta Neurologica Scandinavica*.  Again, these perceived weaknesses in Dr. Orrison's opinions can be brought out on cross examination, but are insufficient to exclude the opinions. *Daubert*, 509 U.S. at 596 (stating that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

proof are the traditional and appropriate means of attacking admissible opinion evidence).

4.  Dr. Orrison's Rate of Error

Defendants argue that Dr. Orrison admits that he has made mistakes in reading MRI scans in the past and admits that two neuroradiologists may read a scan and interpret the scans differently.  Defendants also assert that Dr. Orrison's opinions are unreliable because they are inconsistent.  Defendants use as an example Dr. Orrison's findings that both Lori and Alexandra Booth suffered "cerebral atrophy."  Dr. Orrison's description of their cerebral atrophy is virtually identical in both reports, but Dr. Orrison concludes that Lori suffered "mild" cerebral atrophy while Alexandra Booth suffered "diffuse" cerebral atrophy.  Defendants argue that this unexplained difference in conclusions will confuse the jury and thus justifies the exclusion of Dr. Orrison's opinions.  Defendants may proffer a qualified expert to point out this alleged inconsistency or develop the inconsistency through cross examination, but the Court will not exclude the opinion on that basis.  *See Goebel*, 346 F.3d at  991 (stating that no court is in a position to declare or even to know with any degree of certainty whether otherwise admissible expert testimony is, in fact, correct).

5.  Dr. Orrison's Methodology Is Not Generally Accepted

Defendants finally argue that Dr. Orrison's conclusions that all three Plaintiffs have abnormal MRI scans should be excluded because it is statistically suspect. Defendants cite a study of 73 carbon monoxide exposed patients in which only 12% were found to have abnormal MRI scans. Plaintiffs respond that this incident involved a large amount of carbon monoxide exposure, and thus it is not surprising that three of the Plaintiffs suffered brain damage. Defendants further argue that in the companion case filed in state court in New Mexico, Dr. Orrison determined that all 13 of those plaintiffs suffered brain damage from carbon monoxide

exposure.  Plaintiffs argue that Defendants have misrepresented the facts of that lawsuit.

According to Plaintiffs, Dr. Orrison's opinions based on MRI studies, contain different findings

for each plaintiff in that lawsuit, and that Dr. Orrison determined that one plaintiff did not have

an identifiable brain abnormality.  Again, any perceived weakness in Dr. Orrison's conclusions

may be attacked on cross examination or by contradictory opinions by one or more other

qualified experts.

THEREFORE IT IS ORDERED that the Motion (Doc. No. 358) is denied (subject to the

parties' ability to request a *Daubert* hearing as mentioned in footnote 1).

_____

UNITED STATES SENIOR DISTRICT JUDGE